# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HILLMAN and MICHAEL E. MECSAS,<br>　　　　　　　Plaintiffs<br><br>v.<br><br><br>SCHNADER HARRISON SEGAL & LEWIS, LLP, *et al.*<br>　　　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 03cv12345 RGS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT

Defendants, Schnader Harrison Segal & Lewis LLP ('Schnader"), Robert L. Collings,

Marilyn Z. Kutler, David Smith, Ralph G. Wellington, Margaret S. Woodruff, and all other

partners of Schnader Harrison Segal & Lewis named as defendants[1] ("defendants") hereby move

---

[1] James E. Abraham, Elizabeth K. Ainslie, Lindsey D. Alton, Stephen J. Anderer, Thomas D. Arbogast, John M. Armstrong, Richard A. Barkasy, Jeanne Schubert Barnum, Peter H. Beaman, David R. Berk, Jeffrey I. Bernstein, Michael G. Bock, Arthur N. Brandolph, Barry E. Bressler, Gregory W. Buhler, Andrea Hyatt Callan, M. Christine Carty, Marc S. Cornblatt, Ronald S. Cusano, Albert S. Dandridge III, Kenneth R. DeRosa, Benjamin P. Deutsch, Joseph J. Devine, Diana S. Donaldson, Stephen H. Dye, Jeffrey L. Eichen, Robert D. Feder, Walter B. Ferst, Elise A. Fialkowski, Glenn D. Fox, John K. Gisleson, Allan D. Goodridge, Peter S. Greenberg, Megan E. Harmon, Cristopher Charles Hoel, Jennifer DuFault James, Anne E. Kane, Ronald E. Karam, David E. Kenty, Richard W. Kessler, Wilber L. Kipnes, Joan T. Kluger, Bernard B. Kolodner, Peter C. Langenus, Nicholas J. LePore III, Jeffrey W. Letwin, Saul Levit, Dionna K. Litvin, Theresa E. Loscalzo, William J. Maffucci, Michael J. Mangan, Edward J. McBride, Jr., George E. McGrann, Martin Mendelsohn, James R. Meyer, Albert Momjian, Mark A. Momjian, Alexander P. Moon, Leo J. Murphy, Michael G. Neri, Judith F. Olson, Nicholas N. Price, Neil Proto, Kenneth R. Puhala, Nicole M. Reimann, Kenneth I. Rosenberg, Bruce A. Rosenfield, Denna Jo Schneider, Allan B. Schneirov, H. Lee Schwartzberg, Jr., J. Denny Shupe, Samuel W. Silver, Eric T. Smith, Carl A. Solano, J. Robert Stoltzfus, Clinton A. Stuntebeck,

for judgment on the pleadings and/or for summary judgment on the following claims: (1) Mecsas's and Hillman's claims against the individual partner defendants in this action; (2) Mecsas's and Hillman's claims against the defendants for acceleration of the repayment of their capital accounts; (3) Mecsas's claim for any deferred compensation; and (4) Hillman's claim for accelerated deferred compensation.

## FACTUAL BACKGROUND

Schnader is a law firm organized as a Pennsylvania limited liability partnership with a principal place of business at 1600 Market Street, Philadelphia, Pennsylvania. (Statement of Undisputed Material Facts in Support of Defendants' Motion for Judgment on the Pleadings and/or for Summary Judgment ("Statement") ¶ 1). Schnader also has offices in Washington, D.C.; New York, New York; Cherry Hill, New Jersey; San Francisco, California; and Norristown and Pittsburgh, Pennsylvania. (Statement ¶ 2).

In January 2000, Schnader entered an agreement with the fourteen shareholders of a Boston law firm organized as a professional corporation, Goldstein & Manello, P.C. ("G&M"), dated as of January 14, 2000 ("January 14, 2000 Agreement"). (Statement ¶ 3). As a result of the January 14, 2000 Agreement, Schnader opened a Boston office under the trade name Schnader Harrison Goldstein & Manello ("SHGM") and the G&M shareholders became partners of Schnader. (Statement ¶ 4). Under the terms of the January 14, 2000 Agreement, the former

---

Dennis R. Suplee, Sherry A. Swirsky, Jerry L. Tanenbaum, Paul N. Tauger, Gregory H. Teufel, Paul H. Titus, George N. Tompkins III, Anthony J. Watkins, Nancy M. Weinman, Stewart M. Weintraub, Keith E. Whitson, Nancy Winkelman, Maureen C. Zemel. Richard Fineman and William L. Leonard are named as defendants but have not been properly served and thus are not before the Court.

G&M shareholders were each assigned a capital account of a scheduled amount and were given a deferred compensation agreement.[2] (Statement ¶ 5).

Michael E. Mecsas ("Mecsas") and Donald C. Hillman ("Hillman") were among the 14 shareholders of G&M who became partners of Schnader. (Statement ¶ 6). Within approximately two years of joining Schnader, Mecsas decided to leave Schnader; Hillman decided to leave six months after Mecsas left. (Statement ¶ 7).

In connection with Mecsas's departure from Schnader, a letter dated January 21, 2002, was signed by Robert Somma, a former G&M shareholder who served as the managing partner of Schnader's Boston office, on behalf of SHGM, and also signed by Mecsas (the "Mecsas Letter"). (Statement ¶ 8). A true and accurate copy of the Mecsas Letter is attached as Exhibit A to the Declaration of Diana S. Donaldson submitted herewith and was attached to the Complaint as Exhibit B. (Statement ¶ 9). The Mecsas Letter purported to set forth the terms and conditions under which Mecsas was withdrawing as an equity partner of Schnader. (Statement ¶ 11). In connection with Hillman's departure from Schnader, a similar letter dated June 30, 2002, was signed by Robert Somma, at that time managing partner of Schnader, as well as the managing partner of the Boston office (SHGM), but signed only for SHGM, and also signed by Hillman (the "Hillman Letter"). (Statement ¶ 12). A true and accurate copy of the Hillman Letter is attached as Exhibit B to the Declaration of Diana S. Donaldson and was attached to the Complaint as Exhibit C. (Statement ¶ 13). The Hillman Letter purported to set forth the terms and conditions under which Hillman was withdrawing as an equity partner of Schnader.

---

[2] Plaintiffs' individual deferred compensation agreements do not reflect the form of deferred compensation agreement agreed upon and attached as Exhibit C to the January 14, 2000 Agreement, a fact that is noteworthy since that is the form of agreement the G&M shareholders agreed to deliver to Schnader.

(Statement ¶ 15). None of the individual partner defendants in this action was a signatory to the Mecsas or Hillman Letter. (Statement ¶ 54).

The Mecsas Letter and the Hillman Letter both purport to describe the extent to which Mecsas and Hillman would be entitled to funds in their capital accounts in accordance with the provisions of the Firm's Partnership Agreement dated May 31, 1984 (as amended through January 16, 2001). (Statement ¶ 17). A true and accurate copy of the Partnership Agreement is attached as Exhibit C to the Declaration of Diana S. Donaldson submitted herewith. (Statement ¶ 18). The Partnership Agreement provides that payments of capital accounts "[s]hall be the liability solely of the Firm, and shall not be the personal liability of the individual partners." (Statement ¶ 20). The Mecsas Letter and Hillman Letter state that Mecsas's and Hillman's capital accounts were payable in three equal annual installments, beginning one year after the date of departure. (Statement ¶ 21). For Mecsas, the first installment was allegedly payable January 21, 2003; for Hillman, it was allegedly payable June 30, 2003. (Statement ¶ 22).

Additionally, the Mecsas Letter and the Hillman Letter purport to discuss the extent to which Mecsas and Hillman would be entitled to deferred compensation in accordance with the provisions of their respective deferred compensation agreements ("Mecsas Deferred Compensation Agreement" and "Hillman Deferred Compensation Agreement"). (Statement ¶ 23). True and accurate copies of the Mecsas Deferred Compensation Agreement and the Hillman Deferred Compensation Agreement are attached as Exhibits D and E respectively to the Declaration of Diana S. Donaldson submitted herewith. (Statement ¶ 24). The Hillman and Mecsas Deferred Compensation Agreements provide that they are "only an obligation of SHSL, without recourse to the individual partners of SHSL." (Statement ¶ 26).

- 4 -

The deferred compensation payments set forth in the Hillman and Mecsas Deferred Compensation Agreements were payable semiannually on July 1 and December 1, beginning a year after Mecsas's and Hillman's respective departures. (Statement ¶ 27). Under both the Mecsas and Hillman Letters and the Mecsas and Hillman Deferred Compensation Agreements, the first installment of such payments was allegedly payable to Mecsas and Hillman on July 1, 2003. (Statement ¶ 28). On or about July 1, 2002 -- a year early -- Schnader erroneously made payment to Mecsas of the first deferred compensation installment in the amount of $19,383.41. (Statement ¶ 31). Schnader notified Mecsas that this payment was an error and asked for return of these funds. (Statement ¶ 33). Notwithstanding Schnader's request, Mecsas failed to return the funds. (Statement ¶ 35). Accordingly, on the correct date for payment of the first installment of deferred compensation to Mecsas -- July 1, 2003 -- Schnader, having already paid it, did not pay it again. (Statement ¶ 36).

Under the Mecsas and Hillman Deferred Compensation Agreements, only certain identified "Acceleration Events" accelerate the installment payments. (Statement ¶ 37). The only possibly applicable "Acceleration Event" provides: "An installment payment of deferred compensation shall not be paid when due . . . *and such failure shall continue for five days after receipt of notice of such failure by SHSL* . . . ." (Statement ¶ 38) (emphasis added). At no time has Mecsas or Hillman ever provided the required notice to Schnader; nor do they allege in the Complaint to have provided such notice. (Statement ¶ 40). Thus, no "Acceleration Event" has occurred. (Statement ¶ 41).

On December 31, 2002, Schnader's Boston office, which was still doing business as SHGM, closed, and, consequently, Schnader no longer maintains an office in Massachusetts. (Statement ¶ 43).

On October 20, 2003, both Mecsas and Hillman filed suit in the Superior Court of Massachusetts for breach of contract, seeking to accelerate the capital and deferred compensation payments. (Statement ¶ 44). They sued not only Schnader, but also Schnader's individual equity and income (employee) partners. (Statement ¶ 44).

There are 96 individual present and former partners of Schnader named in this Complaint: 55 current or former equity partners, 39 current or former income partners (who are only employees of Schnader), and 2 former income partners who were not served.[3] (Statement ¶ 45). None of these individual partner defendants resides in Massachusetts. (Statement ¶ 50). None of the individual partner defendants owns property in Massachusetts. (Statement ¶ 51). None of the individual partner defendants has any business contacts in Massachusetts that give rise to the claims in this case. (Statement ¶ 52). None of the individual partner defendants negotiated the Mecsas Letter or the Hillman Letter.[4] (Statement ¶ 53). None of the individual partner defendants was a signatory to the Mecsas Letter or the Hillman Letter. (Statement ¶ 54). None of the individual partner defendants was a signatory to the Deferred Compensation Agreements, except that they were signed by Ralph G. Wellington in his capacity as chairman of Schnader. (Statement ¶ 55).

---

[3] Richard Fineman and William L. Leonard were not properly served in this case as the summons and Complaint were sent to Schnader's office in Philadelphia when they no longer worked there. Mr. Leonard retired from Schnader as of January 31, 2001. (Statement ¶ 49).

[4] In fact, twelve of the income partners became partners after the date of the last alleged breach at issue, July 1, 2003. (Statement ¶ 48).

# ARGUMENT

I.    The Applicable Standards

A.    Motion For Judgment On The Pleadings

The most commonly used standard for a district court to use when evaluating a motion to

dismiss[5] for lack of personal jurisdiction is the "*prima facie*" standard.[6] *Boit v. Gar-Tec Prods,*

*Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *see Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-

84 (1st Cir. 1997). Under the *prima facie* standard, the district court considers whether "[t]he

plaintiff has proffered evidence that, if credited, is enough to support findings of all facts

essential to personal jurisdiction." *Boit*, 967 F.2d at 675. "To defeat a motion to dismiss when

the court uses this method the plaintiff must make the showing as to every fact required to satisfy

'both the forum's long-arm statute and the due process clause of the Constitution.'" *Id.* In order

for the plaintiff to prevail under the *prima facie* standard, the "plaintiff must go beyond the

pleadings and make affirmative proof." *Id.*

B.    Summary Judgment

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits[7], if any, show that there is no genuine issue as to

---

[5] The standard of review for evaluating a motion for judgment on the pleadings is essentially the same as that for evaluating a motion to dismiss. *Petricca v. City of Gardner*, 194 F. Supp.2d 1, 4 (D. Mass. 2002).

[6] Other standards that courts may use include the preponderance standard and the likelihood standard. *Boit*, 967 F.2d at 676-78.

[7] Pursuant to 28 U.S.C. § 1746, "Where, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . ."

a material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Therefore, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of a mere "scintilla of evidence" in support of the non-moving party's position does not make summary judgment inappropriate. *Id.* at 252. Instead, the question for the court is whether a "fair-minded jury" could reasonably find for the non-moving party. *Id.* The opposing party cannot defeat a well-supported summary judgment motion by resting upon the mere allegations or denials of its pleadings. *See Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1159 (1st Cir. 1994).

II.    The Individual Partner Defendants Are Entitled To Judgment As A Matter Of Law

A.    This Court Lacks Personal Jurisdiction Over The Individual Partner Defendants

The individual partner defendants are not subject to personal jurisdiction in Massachusetts. "Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with the basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5 (1979).

Under the Massachusetts long-arm statute, "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (*a*) transacting any business in this commonwealth . . . ." Mass. Gen. L. c. 223A, § 3. Under the United States Constitution, a nonresident defendant may be subject to

- 8 -

jurisdiction in a state only if it has "minimum contacts" such that "maintenance of the suit does not offend traditional notions of fair play and justice," *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), or if the defendant has performed some act "by which [it] purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235 (1958). The Massachusetts Supreme Judicial Court has summarized the inquiry as follows: "[w]hether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Good Hope*, 378 Mass. at 7.

As a general proposition, it is well established that "[j]urisdiction over individual officers of a corporation may not be based merely on jurisdiction over the corporation." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 959 F. Supp. 36, 38 (D. Mass. 1997) (jurisdiction over ABA does not confer jurisdiction over member of the ABA Council or Accreditation Committee). In other words, jurisdiction must be established as to each defendant.

Similarly, jurisdiction over individual partners may not be premised merely on jurisdiction over the partnership.[8] Although the law in Massachusetts is largely undeveloped on this point,[9] it is likely that Massachusetts would follow the well reasoned rule adopted by other jurisdictions that individual partners may not be sued in Massachusetts based solely on the

---

[8] Although not applicable to the instant situation, note the "general rule . . . that jurisdiction over a *partner* confers jurisdiction over *the partnership*." *Donatelli v. National Hockey League*, 893 F.2d 459, 465-66 (1st Cir. 1990) (emphasis added).

[9] *Cf. Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabik*, 295 F.3d 59, 67 (1st Cir. 2002).

contacts of the partnership. *See Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990). According to the United States Court of Appeals for the Ninth Circuit:

> The [plaintiffs] may have been misled into thinking that the contacts of the partnership may be imputed to the partners because the reverse is true: The contacts of the partners may establish jurisdiction over the partnership. This is so because each partner acts as an agent of the partnership when carrying on the business of the partnership in the usual way. . . . However, while each partner is generally an agent of the *partnership* for the purpose of its business, he is not, ordinarily an agent of his *partners*. Thus, a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners. In this case, the district court has jurisdiction over only those individual partners who personally established the requisite minimum contacts with California.

*Sher*, 911 F.2d at 1366; *see Ytuarte v. Gruner + Jahr Printing and Publishing Co.*, 935 F.2d 971, 972-73 (8th Cir. 1991) (holding it would be unconstitutional to exercise personal jurisdiction over several partners merely because the partnership owned property and produced goods in state); *Salem Radio Representatives, Inc. v. Can Tel Market Support Group*, 114 F. Supp.2d 553, 557 (N.D. Texas 2000) (personal jurisdiction over general partnership alone is not sufficient to exercise jurisdiction over partners because "[t]he requirement of minimum contacts must be met as to *each* defendant"); *Guy v. Layman*, 932 F. Supp. 180, 183 (E.D. Ky. 1996) (adopting the analysis of the Ninth Circuit in *Sher v. Johnson* and concluding that plaintiff must show the state has jurisdiction over each individual partner, regardless of its ability to exercise jurisdiction over the partnership); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("[T]he requirements of *International Shoe* [*v. State of Wash.*, 326 U.S. 310 (1945)] . . . must be met as to each defendant over whom a state court exercises jurisdiction.").

In this case, aside from their membership as equity and income partners in Schnader, a firm which at one time had an office in Massachusetts, the individual partners have no contacts

with the Commonwealth related to the plaintiffs' Complaint. None of the individual partner defendants resides in Massachusetts. (Statement ¶ 50). None of the individual partner defendants owns property in Massachusetts. (Statement ¶ 51). None of the individual partner defendants has any business contacts in Massachusetts that give rise to the claims in this case. (Statement ¶ 52). Accordingly, plaintiffs have offered no allegations or proof that the individual partner defendants are subject to personal jurisdiction in the Commonwealth, and accordingly, the claims against those defendants should be dismissed.

      B.     The Individual Partner Defendants Are Not Personally Liable Under The Agreements At Issue

Even if this Court should find that the individual partner defendants are subject to personal jurisdiction in the Commonwealth, it should still dismiss plaintiffs' claims against the individual partner defendants because the alleged contract documents clearly and unambiguously establish that there is no individual liability on their part. "Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court." *Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995) (citations and internal quotation marks omitted). If the court determines that the contract language is unambiguous, it must interpret the contract according to its plain terms. *Bank v. Int'l Bus. Mach. Corp.*, 145 F.3d 420, 424 (1st Cir. 1998) (citation omitted). Summary judgment is appropriate if those plain terms unambiguously favor one side. *Id.*

      1.     The Individual Partners Are Not Parties To The Withdrawal Letters Upon Which Plaintiffs Based Their Claims

The plaintiffs have brought breach of contract claims arising from an alleged breach of the Hillman Letter and the Mecsas Letter. Plaintiffs claim that they are owed money in their capital accounts and deferred compensation. Both the Hillman Letter and the Mecsas Letter,

-11-

however, are executed by Robert Somma on behalf of Schnader Harrison Goldstein & Manello.

Additionally, the Hillman Letter and the Mecsas Letter both unequivocally state that any

obligation arising from those letters is an obligation of Schnader.[10]  For example, the Hillman

Letter[11] provides that:

> 3.    Capital Account.  The Firm will fully satisfy its obligation to pay you the
> $102,116.17 balance in your capital account as of December 31, 2001 in accordance with the
> provisions of Section 11.01 of the Firm's Partnership Agreement.  More specifically, the Firm
> will pay the account in three equal annual installments commencing on June 30, 2003.

> 4.    Deferred Compensation.  You are entitled to be paid deferred compensation in
> accordance with the provisions of the Deferred Compensation Agreement dated as of January 14,
> 2000 between the Firm and you.  You and the Firm agree that (a) this compensation will be paid
> in twenty equal semi-annual installments commencing on July 1, 2003 and (b) the computation
> of this compensation is set forth in the attached June 12, 2002 e-mail from Joseph Manello to
> Robert Somma.

(Statement ¶¶ 13, 16) (emphasis added).

In other words, the provisions of the Hillman Letter and the Mecsas Letter are clear and

unambiguous.  Any purported obligation arising from the Hillman and the Mecsas Letter would

be obligations of Schnader only.

Therefore, as the individual partners are not liable under the Hillman Letter or the Mecsas

Letter, summary judgment is appropriate on these documents alone.

### 2.    The Individual Partners Are Not Liable Under The Partnership Agreement

Not only are the individual partner defendants not parties to the Hillman Letter and

Mecsas Letter, the partners incur no liability to Hillman or Mecsas under the Partnership

Agreement, whose capital payment provision (Section 11.01) is incorporated into the Hillman

---

[10] It is for another day to explore the enforceability of Mr. Somma's attempt to obligate the Schnader firm through a letter signed expressly on behalf of only its Boston office and not approved by its Executive Committee or Chairman.

[11] The Mecsas Letter contains similar provisions.  *See* Statement ¶¶ 9, 16.

and Mecsas Letters. The letters expressly acknowledge that the Schnader firm's obligation to pay the balance in the capital account arises from Section 11.01 of the Partnership Agreement. In that regard, Section 11.03 of the Partnership Agreement, which governs payments under Section 11.01, explicitly and clearly provides that the individual partners are not liable for those payments. According to Section 11.03, "Payments of amounts under Articles . . . XI [Payment of Capital Account and Maximum Obligation of Firm] hereof shall be the liability solely of the Firm, and shall not be the personal liability of the individual partners." (Statement ¶ 20) (emphasis added). Accordingly, by the explicit terms of the Partnership Agreement, as incorporated into the Hillman and Mecsas Letters by reference, the individual partner defendants are not liable to Mecsas or Hillman.

### 3. The Individual Partners Are Not Parties To The Deferred Compensation Agreements And Are Expressly Not Individually Liable Thereunder

Finally, the Hillman and Mecsas Letters provide for payment of deferred compensation "in accordance with the provisions of the Deferred Compensation Agreement dated as of January 14, 2000" of each of them, thus incorporating their respective Deferred Compensation Agreements. (Statement ¶ 23; Exhibit A, ¶ 4; Exhibit B, ¶ 4). The individual partner defendants have no liability under these agreements. The Deferred Compensation Agreements are agreements between Hillman and Schnader and between Mecsas and Schnader and therefore, create no obligations upon the individual partner defendants. (Statement ¶ 24). The Deferred Compensation Agreements specifically provide that the agreements "shall constitute only an obligation of SHSL, without recourse to the individual partners of SHSL." (Statement ¶ 26; Exhibit D, ¶ 8(i); Exhibit E, ¶ 8(i)) (emphasis added). By their express terms, the Deferred Compensation Agreements preclude liability of the individual defendants.

-13-

C.    The Income Partners Are Employees And, As Such, Are Not Liable

Additionally, the income partners[12] are employees of Schnader.  (Statement ¶ 47).  As employees, the income partners have no ownership and no capital in the Schnader firm. (Statement ¶ 47).  Although Schnader may nominally refer to these employees as partners to the public, there can be no doubt that both Hillman and Mecsas -- as insiders and equity partners themselves -- were aware that income partners are neither owners of the Schnader firm, nor parties to the Partnership Agreement.  Since the income partners were neither owners of Schnader nor parties to the Partnership Agreement and Hillman and Mecsas are chargeable with knowledge that they were only employees, the income partners are not responsible for Schnader's debts, and cannot be held liable to Hillman or Mecsas. *See City of Wheeling v. Chester*, 134 F.2d 759, 762 (3d Cir. 1943) (profit-sharing employees were not owners of partnership, and hence, not "[p]roportionally chargeable with the losses of the business . . . ."); *cf.* Mass. Gen. L. c. 108A, § 6 ("A partnership is an association of two or more persons to carry on as co-owners a business for profit . . . ." ).[13]

---

[12] The following individual defendants are current or former income partners: James E. Abraham, Lindsey D. Alton, Stephen J. Anderer, Richard A. Barkasy, Jeanne Schubert Barnum, Peter H. Beaman, Jeffrey I. Bernstein, Michael G. Bock, Gregory W. Buhler, Andrea Hyatt Callan, Kenneth R. DeRosa, Benjamin P. Deutsch, Joseph J. Devine, Jeffrey L. Eichen, Robert D. Feder, Elise A. Fialkowski, John K. Gisleson, Megan E. Harmon, Cristopher Charles Hoel, Jennifer DuFault James, Anne E. Kane, Joan T. Kluger, Bernard B. Kolodner, Dionna K. Litvin, Edward J. McBride, Jr., Alexander P. Moon, Judith F. Olson, Neil Proto, Kenneth R. Puhala, H. Lee Schwartzberg, Jr., Eric T. Smith, J. Robert Stoltzfus, Jerry L. Tanenbaum, Paul N. Tauger, Gregory H. Teufel, George N. Tompkins III, Nancy M. Weinman, Keith E. Whitson, Maureen C. Zemel.  (Statement ¶ 46).

[13] It goes without saying that the twelve income partners who assumed that position with Schnader after July 1, 2003 – the date of the last alleged breach at issue (Statement ¶ 48) – could have no liability.

-14-

In sum, there are no material facts in dispute and the individual partner defendants are entitled to judgment as a matter of law on plaintiffs' breach of contract claims for the following reasons: (1) this Court lacks personal jurisdiction over the individual partners of the firm; (2) the individual equity and income partners are not personally liable to plaintiffs in light of the clear and unambiguous terms of the Mecsas Letter, the Hillman Letter, the Partnership Agreement and the Deferred Compensation Agreements; and (3) additionally, the income partners are not liable to plaintiffs because they are employees of Schnader and as such, cannot be responsible for any debts of the partnership.

## III.    Defendants Are Entitled To Judgment As A Matter Of Law With Respect To Plaintiffs' Claims For Payments Not Yet Due

### A.    Plaintiff Mecsas Was Paid Deferred Compensation So There Is No Default

Not only are the individual partner defendants entitled to summary judgment against plaintiffs, all of the defendants are entitled to summary judgment to the extent that plaintiffs' breach of contract claims seek payments for sums not yet due. As an initial matter, Mecsas does not have a claim for deferred compensation against Schnader. Mecsas alleges in the Complaint that by the terms of the Mecsas Letter, he was to receive deferred compensation in twenty equal semi-annual installments commencing on July 1, 2003. (Statement ¶ 29). According to Mecsas, the computation of the deferred compensation is twenty payments of $19,383.41. (Statement ¶ 30). Mecsas also admits that he was paid $19,383.41 a year earlier on July 1, 2002. (Statement ¶ 32). Mecsas alleges that Schnader notified Mecsas that the payment was an error and asked for return of the funds, but that Mecsas replied that "[t]he payment should be applied toward the next payment of funds due to Mecsas by SHSL . . . ." (Statement ¶ 34).

-15-

As is clear from Mecsas's allegations and the declaration submitted by Defendants, Schnader erroneously paid Mecsas his first deferred compensation installment a year early and Mecsas failed to return those funds. (Statement ¶¶ 28-36). Consequently, those funds must be applied to the July 1, 2003 deferred compensation payment Mecsas alleges he is owed, as Mecsas tacitly concedes in the Complaint. Therefore, based on the undisputed material facts, Mecsas was paid the amount of the July 1, 2003 deferred compensation, and defendants are entitled to judgment as a matter of law on Mecsas's breach of contract claim for deferred compensation. Even more plainly, there is no basis on which to attempt acceleration of all the other installments of deferred compensation.

### B.    Plaintiffs' Failure To Give Notice Precludes Acceleration Of The Deferred Compensation Payments

Furthermore, defendants are entitled to summary judgment on Mecsas's and Hillman's claim to accelerate all installments of the deferred compensation payments because the only pertinent "Acceleration Event" under the Deferred Compensation Agreements has not occurred.[14] That is, the Mecsas and Hillman Deferred Compensation Agreements provide that an "'Acceleration Event' means the occurrence of any one or more of the following events: 1.19.1 An installment payment of deferred compensation shall not be paid when due under the provisions of Section 3(a)(ii) and such failure shall continue for 5 days after receipt of notice of such failure by SHSL . . . ."[15] (Statement ¶ 38) (emphasis added).

In order for the "Acceleration Event" to occur Schnader must first receive notice of failure to make payment. (Statement ¶ 38). Under Section 7 of the Deferred Compensation

---

[14] The Deferred Compensation Agreements are incorporated into the Mecsas and Hillman Letters, as discussed at page 13, above. (*See* Statement ¶ 23).

[15] None of the other "Acceleration Events" are applicable here.

Agreement, such notice must be in writing by hand delivery or by certified mail or by telegram, unless there is actual receipt. (Statement ¶ 39). Neither Mecsas nor Hillman ever provided the required notice to Schnader that Schnader had failed to make a payment of deferred compensation. (Statement ¶ 40). Since the plaintiffs provided no notice, the acceleration provision was not triggered. *See Beal Bank S.S.B. v. Krock*, 2000 U.S. App. LEXIS 10 at **4-5 (1st Cir. January 3, 2000) (failure of bank to give notice or opportunity to cure prevented acceleration of debt). Rather than provide any notice (and allow Schnader the opportunity of five days to cure), after the alleged failure to make payment on July 1, 2003, Mecsas and Hillman brought suit in October 2003, thereby thwarting the entire purpose of the "Acceleration Event" provision in the Deferred Compensation Agreements. *Cf. Milona Corp. v. Piece O' Pizza of America Corp.*, 1 Mass. App. 839, 840 (1973) (notice provision designed to give plaintiff an opportunity to cure default). Accordingly, defendants are entitled to summary judgment on plaintiffs' breach of contract claims to the extent that the claims are based on the acceleration of payments, that is, to the extent they seek more than 1/20 of the deferred compensation plaintiffs claim to be owed.

      C.      There Is No Acceleration Because Plaintiffs Have Alleged Only A Partial Breach

Additionally, any capital account payment or deferred compensation payment due Mecsas and Hillman cannot be accelerated because plaintiffs have only alleged a partial breach in their Complaint. Allegations of a partial breach for installment payments do not give rise to a claim for damages for total breach. *See* Restatement (Second) of Contracts § 243(3) ("Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation,

-17-

does not give rise to a claim for damages for total breach."); *Clark v. Trumble*, 44 Mass. App. 438, 445 (1998) ("[W]hen an instrument is payable in installments, the cause of action on each installment accrues on the date following the date the installment is due."); *John Hancock Mutual Life Ins. Co. v. Banerji*, 2000 WL 1798555 at *15 (Mass. Super. 2000) ("[F]uture installments under a contract cannot be accelerated and included as court-ordered damages if they were not due at the time damages were awarded.").

Plaintiffs allege in their Complaint that all payments allegedly due under the Mecsas Letter and the Hillman Letter are accelerated. However, as is evident from the Mecsas Letter, the Hillman Letter and the Partnership Agreement, the capital account payments were installment payments commencing on January 21, 2003 and June 30, 2003, for Mecsas and Hillman, respectively. (Statement ¶¶ 9, 13, 18, 21, 22). That is, the second payment does not come due until January 21, 2004 and June 30, 2004 and the third payment does not come due until January 21, 2005 and June 30, 2005, for Mecsas and Hillman, respectively. The deferred compensation payments were also installment payments. Both Mecsas and Hillman were to be paid in twenty semi-annual installments commencing on July 1, 2003. (Statement ¶¶ 9, 13, 27, 28). Therefore, at most, the undisputed material facts show that, at the time the Complaint was filed, defendants were only in breach of one capital account payment for Mecsas and one for Hillman[16] and one deferred compensation payment for Hillman. Accordingly, judgment as a matter of law should issue for defendants on plaintiffs' claims for additional accelerated payments (that is, amounts

---

[16] Additionally, Hillman does not even allege that he made demand upon Schnader for payment and that Schnader refused, but merely that "[u]pon information and belief, SHSL does not intend to meet its obligations under the Hillman Separation Agreement." (Statement ¶ 42). In other words, plaintiff Hillman has failed to set forth any facts which would overcome defendants' assertion that the payments may not be accelerated because plaintiffs have only alleged a partial breach.

-18-

greater than 1/3 of Mecsas's and Hillman's capital accounts and amounts greater than 1/20 of

Hillman's deferred compensation).

IV.    Conclusion

For the foregoing reasons, defendants hereby request that the Court dismiss and/or enter

judgment as a matter of law against plaintiffs on the following claims: (1) Mecsas's and

Hillman's breach of contract claims against the individual partner defendants in this action; (2)

Mecsas's breach of contract claim for deferred compensation; (3) Mecsas's breach of contract

claim for accelerated return of his capital account; (4) Hillman's breach of contract claim for

accelerated return of his capital account; and (5) Hillman's breach of contract claim for

acceleration of Hillman's deferred compensation.

> SCHNADER HARRISON SEGAL & LEWIS
> LLP, ROBERT L. COLLINGS, MARILYN Z.
> KUTLER, DAVID SMITH, RALPH G.
> WELLINGTON, MARGARET S. WOODRUFF
> and ALL OTHER PARTNERS OF SCHNADER
> HARRISON SEGAL & LEWIS LLP
>
> By their attorneys,
>
> Michael DeMarco (BBO #119960)
> Daniel E. Rosenfeld (BBO #560226)
> Kirkpatrick & Lockhart LLP
> 75 State Street
> Boston, MA  02109
> (617) 261-3100

Dated:    March 26, 2004

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail hand on _March 26, 2004_

-19-