UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HILLMAN and MICHAEL E. MECSAS,<br><br>　　　　　　　Plaintiffs<br><br>v.<br><br><br>SCHNADER HARRISON SEGAL & LEWIS, LLP, *et al.*<br>　　　　　　　Defendants | Civil Action No. 03cv12345 RGS |

## DECLARATION OF DIANA S. DONALDSON IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT

I, Diana S. Donaldson, do hereby make this declaration pursuant to 28 U.S.C. § 1746:

1.　I am the managing partner of the law firm Schnader Harrison Segal & Lewis LLP ("Schnader").

2.　I make this declaration with, and in support of, Defendants' Motion for Judgment on the Pleadings and/or for Summary Judgment. I have personal knowledge of the facts herein or through my position as managing partner of Schnader.

3.　Schnader is a law firm organized as a Pennsylvania limited liability partnership with a principal place of business at 1600 Market Street, Philadelphia, Pennsylvania. Schnader also has offices in Washington, D.C.; New York, New York; Cherry Hill, New Jersey; San Francisco, California; and Norristown and Pittsburgh, Pennsylvania.

4.　In January 2000, Schnader entered an agreement with the fourteen shareholders of a Boston law firm organized as a professional corporation, Goldstein & Manello, P.C. ("G&M") dated as of January 14, 2000 ("January 14, 2000 Agreement").

5. As a result of the January 14, 2000 Agreement, Schnader opened a Boston office under the trade name Schnader Harrison Goldstein & Manello ("SHGM") and the G&M shareholders became partners of Schnader.

6. Under the terms of the January 14, 2000 Agreement, the former G&M shareholders were each assigned a capital account of a scheduled amount and were given a deferred compensation agreement.

7. Michael E. Mecsas ("Mecsas") and Donald C. Hillman ("Hillman") were among the 14 shareholders of G&M who became partners of Schnader.

8. In January 2002, Mecsas left Schnader. In connection with his departure, a letter dated January 21, 2002, was signed by Robert Somma, a former G&M shareholder who was serving as the managing partner of Schnader's Boston office, on behalf of SHGM, and also signed by Mecsas (the "Mecsas Letter"). (A true and accurate copy of the Mecsas Letter is attached as Exhibit A herewith and was attached to the Complaint as Exhibit B).

9. The Mecsas Letter purported to set forth the terms and conditions under which Mecsas was withdrawing as an equity partner of Schnader.

10. In June 2002, Hillman left Schnader. In connection with his departure, a similar letter dated June 30, 2002, was signed by Robert Somma, at that time managing partner of Schnader, as well as managing partner of the Boston office (SHGM), but signed only for SHGM, and also signed by Hillman (the "Hillman Letter"). (A true and accurate copy of the Hillman Letter is attached as Exhibit B herewith and was attached to the Complaint as Exhibit C).

11. The Hillman Letter purported to set forth the terms and conditions under which Hillman was withdrawing as an equity partner of Schnader.

12. The Mecsas Letter and the Hillman Letter both purport to describe the extent to which Mecsas and Hillman would be entitled to funds in their capital accounts in accordance with the provisions of the Firm's Partnership Agreement dated May 31, 1984 (as amended through January 16, 2001). (A true and accurate copy of the Partnership Agreement is attached as Exhibit C herewith).

13. The Partnership Agreement provides that payments of capital accounts "[s]hall be the liability solely of the Firm, and shall not be the personal liability of the individual partners." (Exhibit C at § 11.03).

14. The Mecsas Letter and Hillman Letter state that Mecsas's and Hillman's capital accounts were payable in three equal annual installments, beginning one year after the date of departure. For Mecsas, the first installment was allegedly payable January 21, 2003; for Hillman, it was allegedly payable June 30, 2003.

15. Additionally, the Mecsas Letter and the Hillman Letter purport to discuss the extent to which Mecsas and Hillman would be entitled to deferred compensation in accordance with the provisions of their respective deferred compensation agreements ("Mecsas Deferred Compensation Agreement" and "Hillman Deferred Compensation Agreement"). (True and accurate copies of the Mecsas Deferred Compensation Agreement and the Hillman Deferred Compensation Agreement are attached as Exhibits D and E herewith).

16. The Hillman and Mecsas Deferred Compensation Agreements provide that they are "only an obligation of SHSL, without recourse to the individual partners of SHSL." (Exhibit D at ¶ 8(i); Exhibit E at ¶ 8(i)).

17. The deferred compensation payments set forth in the Hillman and Mecsas Deferred Compensation Agreements were payable semiannually on July 1 and December 1, beginning a year after Mecsas's and Hillman's respective departures.

18. Under both the Mecsas and Hillman Letters and the Mecsas and Hillman Deferred Compensation Agreements, the first installment of such payments was allegedly payable to Mecsas and Hillman on July 1, 2003.

19. On or about July 1, 2002 -- a year early -- Schnader erroneously made payment to Mecsas of the first deferred compensation installment in the amount of $19,383.41.

20. Schnader notified Mecsas that this payment was an error and asked for return of these funds.

21. Notwithstanding Schnader's request, Mecsas failed to return the funds.

22. Accordingly, on the correct date for payment of the first installment of deferred compensation to Mecsas -- July 1, 2003 -- Schnader, having already paid it, did not pay it again.

23. Under the Mecsas and Hillman Deferred Compensation Agreements, only certain identified "Acceleration Events" accelerate the installment payments.

24. The only possibly applicable "Acceleration Event" provides: "An installment payment of deferred compensation shall not be paid when due . . . and such failure shall continue for five days after receipt of notice of such failure by SHSL . . . ." Under Section 7 of the Deferred Compensation Agreements, such notice must be in writing by hand delivery or by certified mail or by telegram, unless there is actual receipt.

25. At no time has Mecsas or Hillman ever provided the required notice to Schnader; nor do they allege in the Complaint to have provided such notice.

26. On December 31, 2002, Schnader's Boston office, which was still doing business as SHGM, closed, and, consequently, Schnader no longer maintains an office in Massachusetts.

27. On October 20, 2003, both Mecsas and Hillman filed suit in the Superior Court of Massachusetts for breach of contract, seeking to accelerate the capital and deferred compensation payments. They sued not only Schnader, but also Schnader's individual equity and income (employee) partners.

28. There are 96 individual present and former partners of Schnader named in this Complaint: 55 current or former equity partners, 39 current or former income partners (who are only employees of Schnader), and 2 former income partners who were not served.

29. The following individual defendants are current income partners: James E. Abraham, Lindsey D. Alton, Stephen J. Anderer, Richard A. Barkasy, Jeanne Schubert Barnum, Peter H. Beaman, Jeffrey I. Bernstein, Michael G. Bock, Gregory W. Buhler, Andrea Hyatt Callan, Kenneth R. DeRosa, Benjamin P. Deutsch, Joseph J. Devine, Robert D. Feder, Elise A. Fialkowski, John K. Gisleson, Megan E. Harmon, Cristopher Charles Hoel, Jennifer DuFault James, Anne E. Kane, Joan T. Kluger, Dionna K. Litvin, Edward J. McBride, Jr., Alexander P. Moon, Judith F. Olson, Neil Proto, Kenneth R. Puhala, H. Lee Schwartzberg, Jr., Eric T. Smith, J. Robert Stoltzfus, Jerry L. Tanenbaum, Paul N. Tauger, Gregory H. Teufel, George N. Tompkins III, Nancy M. Weinman, Keith E. Whitson, and Maureen C. Zemel. Jeffrey L. Eichen and Bernard B. Kolodner are former income partners who have resigned since the Complaint was filed.

30. Schnader's income partners are employees and not owners of the law firm. They make no capital contribution to the firm. As employees, Schnader's income partners are not parties to the Partnership Agreement.

31. Alexander P. Moon, Kenneth R. Puhala, Andrea Hyatt Callan, Benjamin P. Deutsch, Dionna K. Litvin, Anne E. Kane, Paul N. Tauger, Gregory H. Teufel, Keith W. Whitson, Maureen C. Zemel, Nancy M. Weinman, and Jeffrey I. Bernstein, all income partners, became partners after the date of the last alleged breach at issue, July 1, 2003.

32. Richard Fineman and William L. Leonard, former income partners of Schnader, have not been properly served in this case as the summons and Complaint were sent to Schnader's office in Philadelphia when they no longer worked there. Mr. Leonard retired from Schnader as of January 31, 2001.

33. None of the individual partner defendants resides in Massachusetts.

34. None of the individual partner defendants owns property in Massachusetts.

35. None of the individual partner defendants has any business contacts in Massachusetts that give rise to the claims in this case.

36. None of the individual partner defendants negotiated the Mecsas Letter or the Hillman Letter.

37. None of the individual partner defendants was a signatory to the Mecsas Letter or the Hillman Letter.

38. None of the individual partner defendants was a signatory to the Deferred Compensation Agreements, except that they were signed by Ralph G. Wellington in his capacity as chairman of Schnader.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2004.

*Diana S. Donaldson*
Diana S. Donaldson

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail hand on March 24, 2004

6